# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHWESTERN DIVISION

| | | | |
|---|---|---|---|
| KATHY BAKER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action | |
| | ) | No. 06-5068-CV-SW-JCE | |
| | ) | | |
| SILVER OAK SENIOR LIVING | ) | | |
| MANAGEMENT CO., L.C., and | ) | | |
| EQUI-MANAGEMENT SERVICES, LTD., | ) | | |
| | ) | | |
| Defendants. | ) | | |

## ORDER

Pending before the Court is defendants' motion for summary judgment, to which plaintiff has replied. Defendants have responded to that reply. For the reasons set forth herein, it will be ordered that defendants' motion for summary judgment be granted.

Plaintiff Kathy Baker, a former Regional Director for Silver Oak Senior Living Management Company, owned and operated by Equi-Management Services, has filed age discrimination and retaliation claims against defendants under the Age Discrimination in Employment Act ["ADEA"] and/or the Missouri Human Rights Act ["MHRA"] .

Defendants move for summary judgment on the following grounds: That plaintiff has not offered evidence to support any claim under the ADEA and/or MHRA because she was not satisfactorily performing her job and was not replaced by a younger person; that she has offered no evidence that her termination was a pretext for age discrimination; that she was terminated for legitimate, non-discriminatory reasons; that she has offered no evidence of any pattern of

1

conduct for age discrimination; and that she has not offered evidence to support a claim for retaliation.

Specifically, in regard to plaintiff's age discrimination claim, defendants assert that plaintiff was not satisfactorily performing her job. It is contended that plaintiff has agreed that the Nevada facility was lagging behind the others; she agrees she received a mixed performance evaluation in 2005 that included negative comments and caused her to be placed on probation; and she agrees that she did not phone in to her supervisor as directed around July 6, 2005, although she was able to make calls. Further, defendants assert that plaintiff's brother, Billy Page, and her employee, Marcia Somers, agreed that Carolyn Thomas asked her to call in and she did not. Additionally, defendants assert that she was not replaced by a younger person because Angie Thomas, age 33, was already in the position as Executive Director at the Butler facility; and plaintiff and Ms. Thomas were directed to switch positions because Ms. Thomas had improved the performance at the Butler facility over the past year after plaintiff was transferred to Nevada. The company wanted to see if she could do the same at the Nevada facility.

It is also the position of defendants that plaintiff has offered no evidence, other than repeated, self-serving statements, that her termination was a pretext for discrimination based upon her age. She repeatedly contends that Ms. Carolyn Thomas made derogatory comments about her appearance, telling her she should dress younger. It is noted that Ms. Thomas is two years younger than plaintiff. Additionally, defendants assert that plaintiff's and/or the opinion of others regarding her job performance is not relevant; rather, it is the perception of the decision maker which is relevant regarding whether she performed her job duties satisfactorily. Further,

defendants contend that plaintiff cannot prove pretext by showing that her performance review under a previous supervisor was satisfactory, because reviews under a previous and different supervisor are not probative of her performance under Ms. Thomas.

Next, defendants assert that plaintiff was terminated for a number of legitimate, non-discriminatory reasons, which culminated in her failure to comply with Carolyn Thomas's direct request on approximately July 6, 2005, that she call in daily after her medical leave was extended. It is contended that this failure to comply, coupled with her facility already lagging behind, her March 2005 probation, and her refusal to accept the lateral position transfer to the Butler facility, resulted in the termination by Ms. Thomas. Defendants state that plaintiff has admitted that she and Ms. Thomas did not seem to get along after Ms. Thomas became her superior in late 2004 in replacement of Ms. Woods, and that tension between an employee and a supervisor does not constitute age-discrimination.

Defendants also contend that plaintiff has presented no evidence of a pattern of conduct based upon age discrimination. They assert that an examination of the employment practices at the Nevada, Lamar, and Butler facilities demonstrate that there is no such pattern of conduct. Specifically, defendants assert that plaintiff was the Executive Director at the Lamar facility until she was transferred to Butler; she was replaced at Lamar by Beth Reed, who is 51 years old, and is still in that position. When plaintiff was transferred from Lamar to Nevada in late 2004, she was replaced with Ruby Parsons, who is 53. When Ms. Parsons was terminated in August of 2004, she was replaced by Angie Thomas, who was approximately 30. Plaintiff replaced Lorraine Grant, who was 44, in Nevada. After plaintiff was terminated, her position was filled by transferring Angie Thomas. Ms. Thomas left the position and it is currently unfilled.

Defendants contend that, in examining the ages of the various employees, there is no evidence of a pattern of conduct of discriminating against employees based upon age.

In this case, defendants assert that plaintiff knew that there was a policy and procedure forbidding discrimination that required that any alleged discrimination be immediately reported, and that she agrees that she never reported any complaints or reported any discrimination. Accordingly, it is asserted that she cannot prove that she participated in a protected activity, and therefore cannot prove that her termination was causally connected to a report that never occurred.

In conclusion, defendants assert that plaintiff was an older employee, who was on probation for job performance, who disregarded her supervisor's instructions in a facility that was lagging behind, and who was terminated for legitimate, non-discriminatory reasons. Further, it is asserted that she never reported any allegation of age discrimination before she was terminated, and therefore, cannot prevail on her retaliation claim. Accordingly, defendants seek summary judgment in their favor on all counts.

In response, plaintiff asserts that she has set forth a prima facie case of age discrimination because she was 53 years old at the date of her termination on July 15, 2005; she had satisfactorily performed her job; and she was terminated and replaced with a younger director. She contends that there is direct evidence of age discrimination in this case in the form of age-related comments and hiring practices, and in defendants' pattern of terminating older employees and hiring younger employees; and that defendants' defenses fail and are a pretext to cover age discrimination. It is her contention that defendants provided shifting reasons regarding why she was terminated. Regarding her retaliation claim, she asserts that she engaged in protected

4

activity, and that defendants took adverse employment action against her, which action was causally connected to her protected activity.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In ruling on motions for summary judgment, the Court is required to give the nonmoving party all reasonable inferences that can be drawn from the underlying facts and resolve all conflicts in that party's favor. Fischer v. NWA, Inc., 883 F.2d 594, 598-99 (8th Cir. 1989), cert. denied, 495 U.S. 947 (1990). The non-movant must, however, resist a summary judgment motion by setting forth specific facts that show there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); Burst v. Coors, 650 F.2d 930, 932 (8th Cir. 1981). The motion may then be granted only if there is no substantial evidence in support of that party's position. Because summary judgment is a drastic remedy, however, it should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. Umpleby v. United States, 806 F.2d 812, 814 (8th Cir. 1986). As the Supreme Court reiterated in Celotex, the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." 477 U.S. at 327.

## Statement of Uncontroverted Facts

1. Plaintiff Kathy Baker, date of birth 10-01-1951, was employed as the Executive Director of an assisted living facility in Lamar, Missouri, Silver Oak Senior Living, from

5

October 2003 until the spring of 2004. In the spring of 2004, she was transferred to serve as the Executive Director at the Butler facility, and served as the director of both until May 2004. She was then transferred to the Nevada facility.

2. Silver Oak Senior Living was operated by defendants Silver Oak Senior Living Management Co., LC (Silver Oak) and Equi-Management Services, Ltd. (Equi-Management).

3. Plaintiff began work in approximately October of 2003, and was discharged on July 15, 2005, at the age of 53. She was an at-will employee.

4. Eric Lindsey, date of birth 6-15-1973, was Chief Executive Officer of Silver Oak from approximately 2001 until his voluntary resignation on May 7, 2007.

5. Jennifer Upshaw, date of birth 7-21-1974, was hired by Lindsey to be Vice President of Silver Oak at the age of 30, until her voluntary resignation in December of 2005.

6. Christine Woods, date of birth 07/16/1962, was hired by Lindsey around October of 2003 to be the Regional Director of Equi-Management. At that time, she became plaintiff's direct supervisor. Ms. Woods resigned from her position in 2004.

7. In October of 2003, Silver Oak, under the ownership and operation of Equi-Management, took over management of three assisted living centers in Missouri, which were located in Nevada, Lamar, and Butler. Previously, plaintiff had worked for Christian Health Care at the Lamar facility, where she was a contract employee from 1998 until August or September of 2003.

8. On about September 30, 2003, Eric Lindsey came to the Lamar facility, where plaintiff was working as the director, to announce that Silver Oak and Equi-Management were taking over operation of Christian Health Care's assisted living facilities in Nevada, Butler, and Lamar.

9. Plaintiff maintained the position as Executive Director that she previously held at Lamar. Beginning in the spring of 2004 until approximately May, plaintiff served as Executive Director over both Lamar and Butler. In May of 2004, after the termination of Nevada's Executive Director, Lorraine Grant, plaintiff became Executive Director at Nevada. She remained in that position until her termination. When plaintiff left Butler, she was replaced by Ruby Parsons, age 53. When she was transferred to Nevada, she replaced Lorraine Grant, age 44.

10. Carolyn Thomas, date of birth 10-16-1953, replaced Christine Woods, age 45, as the Regional Director of Equi-Management in the fall of 2004, and became plaintiff's direct supervisor. Previously, she had worked for Equi-Management as an LPN since 2003. As administrator, Ms. Thomas was based out of the Nevada facility and was the acting LPN for all three of the Missouri facilities.

11. The Nevada, Butler, and Lamar properties are all identical in size, are licensed for 57 beds, and have 19 rooms.

12. On May 19, 2004, plaintiff's supervisor Christine Woods wrote in a performance document that she was dependable, knowledgeable in her field, was a proven leader, and an asset to the company.

13. Plaintiff received a positive email from Jennifer Upshaw on August 4, 2004, which praised her job performance as director, but also criticized her handling of an employee issue.

14. Plaintiff spent time working outside the facility marketing, making telephone calls, and making contacts for new business. The Nevada facility had more difficulty attracting residents because there were other competing assisted living centers in Nevada and none in

Lamar and Butler.  When plaintiff left on medical leave, the census records reflect a census of 17 out of 19, for May of 2005.  In 2005, her census ranged from 14-17 out of 19.  By 2006, the census was never less than 16 and reached 19 for several months.

15.  Plaintiff had a full census in November of 2004, and received a $250.00 bonus in November.

16.  Plaintiff received a cost of living adjustment in January of 2005.

17.  In February of 2005, Carolyn Thomas emailed all the Missouri directors, telling them they had done a good job.

18.  In May of 2005, Carolyn Thomas wrote an email thanking Angela Thomas and plaintiff for the job they were doing. ***

19.  While employed at Silver Oak, plaintiff's facilities where she was director were deficiency free by the state of Missouri.

20.  In March of 2005, plaintiff was written up and placed on indefinite  probation for failing to obtain proper approval before admitting a special needs resident and for dismissing an employee without the presence of a witness.  Carolyn Thomas gave plaintiff the write up, at the direction of Eric Lindsey and Jennifer Upshaw, for failing to follow the chain of command.  Ms. Thomas asked her if she was going to quit over the write up, and plaintiff said she was not.

21.  In April of 2005, plaintiff received her first annual performance evaluation from Carolyn Thomas.  Ms. Thomas indicated that she needed to improve her communication and organization. On a 1-5 scale, with 5 being the best, plaintiff received 4 of the 2 ratings, 5 of the 3 ratings, 3 of the 4 ratings, and no 5 ratings.

22.  In July of 2005, while plaintiff was on medical leave, Carolyn Thomas transferred

her to the Butler facility, which was approximately 35 miles from the Nevada facility where plaintiff had been working.

23. On July 15, 2005, plaintiff was terminated.

24. Angela Thomas, date of birth 12-5-1974, was transferred in July to assume the director position in Nevada, while plaintiff was on medical leave.

25. After plaintiff's termination, Angela Thomas took over as director of both the Nevada and Butler facilities, until a new Executive Director was hired two-three months later.

26. In approximately September or October of 2005, Star McGinnis, age 22, became the new Executive Director at the Butler facility.

27. CEO Eric Lindsey testified that the decision to terminate plaintiff was a joint decision between himself and Carolyn Thomas. Vice President Jennifer Upshaw also testified that the ultimate decision rested with Lindsey and Thomas.

28. It was Thomas's idea to transfer plaintiff to Butler.

29. At the first director's meeting in Oklahoma City, after defendants took over in October of 2003, Eric Lindsey announced to the employees that this was a "young company that enjoys hiring energetic people." At later meetings. Lindsey made other comments about being a youth-oriented company, which was looking for people with more energy who would be willing to work more hours.

30. Carolyn Thomas admitted that she made comments about plaintiff's hearing and memory on no more than two occasions.

31. In Carolyn Thomas's April 2005 evaluation of plaintiff, she noted that plaintiff didn't always remember what she said or what was said to her; that she would become

9

unfocused; and that she didn't delegate her time well.

32.  In April 2005, Carolyn Thomas told Angela Thomas in her performance evaluation that she was very positive and energetic, but that her promptness needed to improve.

33.  Lorraine Grant was fired by Regional Administrator Christine Woods in May of 2004, at the age of 41. She had been working for defendants for less than one year at the time, although she had been working at the facility in Nevada since 1994.  Woods told Grant she had been doing the job too long; Grant believed she was terminated because of her age.

34.  Marcia Somers, age 55, was the Lead CMA at the Nevada facility from May 2005 until she was demoted in October by Regional Director Angela Thomas, age 31.  Somers quit in November of 2005 because of her demotion and the way she had been treated after her demotion by Thomas.

35.  Prior to the write-up in march, Plaintiff had never had any prior oral or written warnings.

36.  On the day of her termination, Carolyn Thomas told plaintiff that she was being fired for not calling in each day during her medical leave.

37.  The Service Letter plaintiff received from defendants was written by CEO Lindsey and stated that plaintiff was fired for failure to follow the chain of command and failure to follow through on instructions given and her poor work performance.

38.  Eric Lindsey testified that plaintiff was terminated for misconduct for allegedly calling two employees to encourage them to walk out or quit while she was on medical leave. He also stated that her termination was based on past history concerning her probationary status and not following directions by checking in.

10

39. Carolyn Thomas completed an Employee Separation/Exit Record, which she faxed to Jennifer Upshaw on July 12, 2005. She stated that from June 20 until July 12, plaintiff had contacted her two times by phone and one time in person. She further stated that she requested that plaintiff call her daily and she had not done so.

40. Jennifer Upshaw testified that plaintiff was terminated for not calling in and because of the condition of her resident files. She could recall no other reason.

41. Defendants had no written policy or practice requiring an employee to call in when they were off work on medical leave.

42. On July 14, plaintiff went to the Nevada facility as directed. Carolyn Thomas, in the presence of Beth Reed, Executive Director at the Lamar facility, told plaintiff that she was giving her the opportunity to resign her position because she had failed to call in while she was on medical leave. Plaintiff refused to voluntarily resign, did not agree to the transfer to Butler, and was terminated.

43. No other employees had ever been fired for failing to call in during medical leave.

44. Eric Lindsey understood that the Nevada facility was difficult to run, because of direct competition, a poor reputation because of prior poor management under the previous management company, and difficulty in finding employees.

**I. Age Discrimination Claim**

<u>Legal Standard</u>

Plaintiff has alleged age discrimination and retaliation in violation of the ADEA in Counts I and II of her complaint. The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of age. 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an

employer-(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. . . .").  In Count III, she alleges claims of age discrimination and retaliation under the MHRA.  Mo. Rev. Stat. § 213.055 makes it an unlawful employment practice to discriminate on the basis of several factors, including age.  Mo. Rev. Stat. § 213.070 prohibits retaliation and discrimination in any manner because of an individual's opposition to prohibited employment practices such as age discrimination.

At the outset, the applicable legal standard under the MHRA should be addressed. Plaintiff contends that defendants' position that Missouri and the Eighth Circuit apply the same prima facie elements for age discrimination claims is an incorrect statement of the law, because they have failed to consider the most recent decision from Missouri's highest court.  Daughterty v. The City of Maryland Heights, No. SC88012, 2007 Mo. LEXIS 130 (Mo. Aug. 7, 2007). Plaintiff asserts in her response that defendants' motion should therefore be deemed as a motion for partial summary judgment because they did not challenge her separate claims under the MHRA.

Defendants point out that this is an unpublished decision, which was not decided when they filed their summary judgment motion.  They have conceded, in their reply, that even applying the "any unfair treatment" or "contributing factor" standard as outlined in Daughterty, the result is unchanged, and that the Court should not convert their motion to a partial motion for summary judgment.  They contend that even assuming that comments about age have been made, this still does not prove any  unfair treatment of plaintiff.   It is contended that plaintiff has simply not provided any credible and admissible evidence that establishes unfair treatment.

Defendants assert that Ms. Carr (60's) and Ms. Halcomb (50's), two of the employees over 40 who worked at the Nevada facility in 2005, and who plaintiff has identified as being persons subjected to age discrimination, are still working there.

Because of the issue raised by plaintiff and defendants' concession that Daugherty is theoretically applicable, the Court will apply the "contributing factor" standard in this case to plaintiff's claims under the MHRA.   A full review of the pleadings in this case leads the Court to the conclusion that defendants' motion should properly be considered as a motion for summary judgment on the claims under both the ADEA and MHRA.

The Eighth Circuit uses the direct evidence framework of Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989), and alternatively,  the indirect evidence, burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973), to determine whether a submissible case has been presented by the plaintiff.  An employee can produce direct evidence of discrimination that demonstrates "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action."  Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004).   If a plaintiff presents no direct evidence of discrimination, the Court must analyze the claim pursuant to the burden-shifting framework set forth in McDonnell Douglas to establish an inference of unlawful discrimination.  Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 907 (8th Cir. 2006).

To establish a prima facie claim of age discrimination under that framework, plaintiff must show (1) she was at least 40 years old; (2) she was meeting her employer's legitimate performance expectations at the time of her termination; (3) she suffered an adverse employment

13

action; and (4) she was replaced by someone substantially younger. See Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005). Once she establishes a prima facie case, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for their actions. If the defendants satisfy their burden, the burden shifts back to plaintiff to show the defendants' proffered reason was a pretext for intentional age discrimination. Id. at 802. Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007). At this stage, plaintiff can only avoid summary judgment if the totality of the evidence creates a fact issue as to whether defendants' proffered reasons are pretextual, and creates a reasonable inference that age was a determinative factor in the termination. Haas, 409 F.3d at 1035. "The ultimate burden of persuading the fact finder of intentional age discrimination [rests with plaintiff] at all times." Id. at 1036.

Discussion

To support her age discrimination claim, plaintiff contends that ageist comments by her supervisors, Carolyn Thomas and Eric Lindsey, constituted both direct and circumstantial evidence that she was discriminated against on the basis of age.

Plaintiff asserts that age comments by defendants' management employees provide strong evidence of age discrimination, whether direct or circumstantial. Plaintiff specifically asserts that CEO Eric Lindsey stated that the company was a young one, and youth-oriented. Regional Director Carolyn Thomas, who was her supervisor, made numerous age-related comments during her employment, directed at plaintiff's own age and "the stereotypes surrounding plaintiff's age that permeated her thinking." [Plaintiff's Response, at 49]. These include comments, beginning in approximately 2005, that plaintiff was looking old and dressing like an old woman; that she needed to dress more modern and younger looking; and that she

14

should not wear her hair in a bun because she looked like one of the residents. She contends that Carolyn Thomas told her that she was getting slow and forgetful; she made repeated comments about her poor hearing; and wrote in her April 2005 evaluation that she was unfocused and had memory problems. It is plaintiff's contention that a jury could infer such matters as being age related, especially when Carolyn Thomas complimented Angela Thomas in her evaluation on her energy. She contends that just prior to her termination Carolyn Thomas commented about walking slow since plaintiff is old.

It is also plaintiff's contention that Carolyn Thomas made ageist comments that were directed at others, in that she repeatedly told plaintiff that she needed to hire young, energetic girls, not slow and old people. She also made comments regarding looking young, and started dressing younger herself. She asserts that Carolyn Thomas told her repeatedly that if she would get rid of the older employees, she could hire younger staff. Plaintiff contends that Carolyn Thomas told her to fire LaDonna Forsythe, Kathy Carr, and Jackie Halcomb, and to write up Marcia Somers, all older employees, because they were old and slow, and that plaintiff refused to do so. She asserts that the plethora of age comments from decision makers CEO Lindsey and plaintiff's direct supervisor, Regional Director Carolyn Thomas, are sufficient for a jury to conclude that there was a specific link between her discharge and age bias, that is sufficient to survive summary judgment as direct evidence of discrimination.

Plaintiff also contends that as soon as defendants took over the operations of assisted living facilities in Missouri and Oklahoma, they engaged in a pattern of firing older employees in favor of younger replacements. She lists several people whom she claims were fired on the basis of age: Lorraine Grant, who was 41, and Ruby Parson, who was 50. She asserts that Parson was

replaced by Angela Thomas, who was 29. It is her contention that Marcia Somers, who was 55, was demoted and her job was given to Leanndra Hoffman, who was 26. Therefore, she asserts that because of these instances and numerous age-related comments, defendants claim that it hired older employees is overshadowed by the overwhelming evidence that they preferred younger employees.

Although disputed by the alleged sources, plaintiff has accused Lindsey and Thomas of making discriminatory statements, which constituted a pattern or policy of age discrimination. Eric Lindsey, a decision maker, allegedly made a general statement regarding the company being a "young, energetic" company. "Such a generalized statement does not evince a discriminatory policy or practice, nor does it tend to establish that age was the basis" for plaintiff's termination, several months later. Wittenburg v. American Exp. Financial Advisors, 464 F.3d 831, 840 (8th Cir. 2006). Likewise, Carolyn Thomas, who was plaintiff's supervisor and thus was a decision maker, allegedly said that plaintiff was slow, that she dressed too old, and that employees should dress younger because it would make the residents feel better. These generalized statements, without more, are insufficient to establish direct evidence that age was the motivating factor for plaintiff's termination. The Court finds that plaintiff and Carolyn Thomas apparently clashed after Ms. Thomas became plaintiff's supervisor, but plaintiff's evidence has failed to relate this tension to plaintiff's age or to age-based discrimination on the part of Carolyn Thomas or Eric Lindsey. It appears that the only evidence of age discrimination is plaintiff's belief that Carolyn Thomas discriminated against her. "Evidence, not contentions, avoids summary judgment." Haas, 409 F.3d at 1036 (citation omitted). The Court finds, therefore, that plaintiff has failed to demonstrate a specific link between the alleged discriminatory animus and her termination that is

sufficient to support a finding by a reasonable fact finder of illegal age discrimination.

Because plaintiff has failed to produce direct evidence of age discrimination, the Court turns to the <u>McDonnell Douglas</u> model to determine if she has established a prima facie case.

It is defendant's contention that plaintiff was not meeting the legitimate expectations of her employer at the time of the termination and that she was not replaced by a younger employee.     Plaintiff alleges that she meets the elements of a prima facie case for age discrimination because she was 53 years old at the time she was terminated, and was therefore a member of a protected class under the ADEA and MHRA; that she performed her job at a level that met or exceeded her employer's legitimate expectations; that she was subjected to adverse employment actions (including being written up, given a poor performance evaluation, being transferred, as well as being terminated); and that she was replaced by a younger employee, Angela Thomas and/or Star McGinnis.

 Plaintiff was 53 at the time of her termination, and therefore, she meets the first prong of establishing a prima facie case.   Further, she was terminated by defendants, which constitutes adverse employment action.

Regarding being replaced by a younger employee, plaintiff contends that Angela Thomas, who replaced her, was 23 years younger, and then Star McGinnis, who was 22, was hired to take over the Butler position.  Defendants contend  that plaintiff was not actually replaced by a younger employee because Angela Thomas was already employed by the company and was transferred to the Nevada facility because of her good performance at Butler.  The Court believes that, for purposes of summary judgment, it can be concluded that plaintiff was replaced by a younger employee, regardless of whether the replacement came from within the

Case 3:06-cv-05068-JCE   Document 70   Filed 10/11/07   Page 17 of 36

organization or was a new hire.

Turning next to the issue of job performance, plaintiff contends that her burden to establish that she met the reasonable expectations of her job is minimal because she had good job evaluations, had received positive emails, and had gotten a pay raise in early 2005, which Jennifer Upshaw admitted would not have been approved by corporate if plaintiff's performance had been poor. In defendants' reply to plaintiff's response, however, defendants state that this was a cost of living increase that all employees received. Defendants contend, moreover, that plaintiff was not meeting her employer's reasonable job expectations, as evidenced by having been placed on probation, having been written-up, and being director of a facility that was lagging behind in the census.

The Court has reviewed the positions of the parties, the deposition testimony, and other exhibits in this case, as well as relevant case law. Because the law requires that the evidence be viewed in the light most favorable to the non-moving party, the Court will assume, without deciding, that plaintiff met the reasonable expectations of her job and that she has therefore established a prima facie case of age discrimination. See Wittenburg, 464 F.3d at 836. Therefore, she has created a rebuttable presumption of unlawful discrimination. Accordingly, defendants are required to produce evidence of a legitimate, nondiscriminatory reason for terminating her.

The Court turns to whether defendants have proffered a legitimate nondiscriminatory reason under the McDonnell Douglas test for her termination. Defendants contend that plaintiff was terminated because of "a number of legitimate, nondiscriminatory issues that culminated in her failure to comply with her supervisor's direct request on approximately July 6 that she call-in

18

daily after her medical leave was extended." [Motion for Summary Judgment, at 12]. It is asserted that this failure to comply, in conjunction with her indefinite probation, the fact that the Nevada facility was lagging behind the other facilities, and her refusal to accept the lateral transfer to Butler resulted in plaintiff being terminated by Carolyn Thomas. Defendants contend that plaintiff has admitted that she and Ms. Thomas did not seem to get along after Ms. Thomas became her supervisor, late in 2004. In reliance on Haas, defendants assert that disagreements or tension between plaintiff and her supervisor do not necessarily constitute tension related to age discrimination.

Having carefully reviewed the reasons stated by defendants for plaintiff's termination, the Court finds that they have produced evidence of legitimate, nondiscriminatory reasons for terminating plaintiff. The burden on defendants is one of production, rather than persuasion, and can involve no credibility assessment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If defendants meet their burden of production, the presumption of discrimination disappears, and plaintiff must show that the reasons for her termination are pretext for age discrimination. In this case, the Court finds that defendants have produced legitimate, nondiscriminatory reasons for terminating plaintiff. It is undisputed by plaintiff that she was on indefinite probation for failing to follow proper chain of command, starting in March of 2005, that she received a mixed performance evaluation in April of 2005, and that she failed to call in after directly being told to do so. The fact that she was told to call in was corroborated by the deposition testimony of Ms. Somers and plaintiff's brother. She also declined a transfer to the Butler facility. Regardless of plaintiff's efforts to challenge these various employment decisions, it cannot be said that these are not legitimate, nondiscriminatory reasons to terminate an

19

employee.

Because defendants have met their burden of production, the presumption of unlawful discrimination disappears, and plaintiff can only avoid summary judgment if the evidence in its entirety creates a fact issue regarding whether defendants' proffered reasons were pretextual, and create a reasonable inference that age was a determinative factor in her termination.

Plaintiff admits that on the day she was terminated, she was informed her that she was being fired for not calling in each day during her medical leave. She admits that when Ms. Thomas completed her Employee Separation/Exit Record, she stated that she had requested that plaintiff call daily during her medical leave, which she had not done. Plaintiff argues, however, that this request was not supported by any written policy or practice. In her Service Letter request response from Defendant Silver Oak, which was signed by CEO Eric Lindsey, the reasons stated were not ones provided at the time of her termination. Rather, the service letter indicated that she was fired for failure to follow the chain of command, and failure to follow through on instructions given and poor work performance. Then, she states that in conflict with these reasons, CEO Lindsey testified in his deposition that she was terminated for misconduct for allegedly encouraging two employees to quit while she was on medical leave; and for her past history concerning her probationary status and not following directions by checking in. Plaintiff asserts that none of these allegations are actually documented by Carolyn Thomas or anyone else. She also contends that Vice President Jennifer Upshaw claimed that plaintiff was terminated for not calling in and because of the condition of the resident files. It is her contention that all this evidence easily supports a finding of pretext.

Plaintiff argues that she has presented sufficient evidence from which a reasonable fact-

finder could conclude that age played a role in her termination and that defendants' proffered reasons for her termination are pretextual; that she has provided sufficient evidence for the trier of fact to disbelieve the employers' explanation of its action as a pretext for discrimination and that age was the motivating, a determining, and/or a contributing factor; and that she has demonstrated pretext by evidence of age-related comments, which shows the discriminatory motives of defendants' management and the company in general, in the decisions to target plaintiff and to terminate her employment, to further the company's agenda of a younger sales force. It is her position that a reasonable juror could conclude, from the plethora of ageist comments by defendants' management and its favoring younger employees, that there was an age discriminatory, company-wide bias against older employees, to satisfy a showing of pretext.

Plaintiff can only avoid summary judgment if the totality of the evidence creates a fact issue as to whether defendants' proffered reasons are pretextual, and creates a reasonable inference that age was a determinative factor in the termination. Haas, 409 F.3d at 1035. "The ultimate burden of persuading the fact finder of intentional age discrimination [rests with plaintiff] at all times." Id. at 1036. The law is clear that "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate her allegations with sufficient probative evidence that would permit a finding in her favor." Haas, 409 F.3d at 1034 (citation omitted). Further, as the courts have recognized, even in cases where a plaintiff has established a prima facie case and presented evidence that the proffered reasons for termination are pretextual, there will be cases where no rational fact finder could conclude that the action was discriminatory. Reeves, 530 U.S. at 148; Mayer v. Nextel West Corp., 318 F.3d 803 (8th Cir. 2003). "It is not enough, in other words, to *dis* believe the employer; the fact finder must *believe*

21

the plaintiff's explanation of intentional discrimination." Id., at 808 (citation omitted). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves, 530 U.S. at 153.

A thorough review of the record in this case convinces the Court that plaintiff has not carried her burden of establishing that the reasons given by defendant for her termination are pretextual, and has not presented sufficient evidence to raise a reasonable inference that age was a determinative factor in her termination.

In reliance on alleged age-based comments, plaintiff has attempted to depict an atmosphere that was hostile to older employees. Such evidence can, if sufficient, together with other evidence, support a reasonable inference of age discrimination. Ryther, 108 F.3d at 842). The Eighth Circuit has "distinguished between comments that demonstrate a "discriminatory animus in the decisional process" from "stray remarks in the workplace," "'statements by nondecision makers, or statements by decisionmakers unrelated to the decisional process.'" Madel v. FCI Management, Inc., 116 F.3d 1247, 1252 (8th Cir. 1997) (citation omitted).

In this case, the Court finds that plaintiff "attributes more meaning to the allegedly discriminatory comments by [] management than they can be rightfully said to bear." Calder v. TCI Cablevision of Missouri, Inc., 298 F.3d 723, 730 (8th Cir. 2002). Even viewed in the light most favorable to plaintiff, comments about youth, energy, and appearance fall short of establishing that they harbored age-based animus and resulted in employment action taken on the basis of age discrimination. The alleged comments about her being slow, not remembering directions, looking like one of the residents when she wore her hair in a bun, etc., are the type of

22

"stray remarks" that the courts have held do not support a finding of pretext. Even assuming they were made by Carolyn Thomas, an obvious decision maker, plaintiff has failed to establish that these remarks were related to the decisional process. Although possibly patronizing and perhaps even rude, they do not create a triable issue on the question of pretext.

The Court must ask whether the evidence is sufficient to create a genuine issue of fact as to whether defendants intentionally discriminated against plaintiff because of her age. This record is bereft of any suggestion that there was any pervasive age-based animus involved in the decision to terminate plaintiff. It can be concluded that the problems between plaintiff and Carolyn Thomas were based on tension and not age; plaintiff and Thomas were approximately the same age; the reason for plaintiff's termination was ultimately her failure to call in and not her age; leading up to that decision was a write-up for failing to follow the chain of command, an indefinite probationary period, and failing to follow a direct order to call in after her medical leave had been extended. As defendants assert, plaintiff has tried to create an age discrimination case "by weaving an intricate web." Mayer, 318 F.3d at 809. She has focused on general comments about youth, energy, and appearance as being age-biased, but without more, she has failed to establish that age-based animus can be said to exist. Accepting all plaintiff's allegations as true regarding age-based statements, these alone fail to create a reasonable inference that defendants were discriminating against plaintiff on the basis of age.

It is also plaintiff's position that defendants have offered inconsistent or shifting reasons for her termination, which supports a finding of pretext. She contends that where a defendant withholds a full explanation of the reasons for its termination decision, but later expands upon its reasons, pretext has been found. The case relied upon by plaintiff, Maschka v. Genuine Parts

23

Co., 122 F.3d 566, 570-71 (8th Cir. 1997), is distinguishable from the instant case. In Maschka, the plaintiff argued that his employer had changed its explanation over time in order to coherently explain its decision to terminate him, but that the "proffered justification reeked of after-the-fact rationalization." Id. at 570. The Court found that the employer's reasons were "flimsy, and thus susceptible of disbelief." Id. at 571. There is no evidence in this case, however, of flimsy excuses or after-the-fact justifications that would create a material factual dispute for trial on the issue of pretext. Rather, the reasonable inference to be drawn from the chain of events is that plaintiff's failure to call in was the culmination of several negative job incidents, that had occurred over several months after a friend and co-worker, Carolyn Thomas, became plaintiff's supervisor. The fact that she may have had good performance reviews under previous and different supervisors is not probative of her performance under Ms. Thomas.

Plaintiff also contends that her case should survive summary judgment because she has demonstrated a pattern by defendants of discharging employees over 40 and replacing them with younger employees. She contends that several people were fired on the basis of age: Lorraine Grant, who was 41, and Ruby Parson, age 50. She asserts that Parson was replaced by Angela Thomas, who was 29. It is her contention that Marcia Somers, who was 55, was demoted and her job was given to Leanndra Hoffman, who was 26. Defendants argue that there was no pattern of conduct of discriminating based on age, no competent evidence of any illegal pattern of practice on their part, and that there is no evidence or inferences to be drawn from examining the employment practices. Specifically, defendants assert that when plaintiff was transferred from the Lamar facility to Butler, she was replaced by Beth Reed, who was 51, and who is still in that position. When plaintiff was transferred from Lamar to Nevada in late 2004, she was

replaced with Ruby Parsons, who is 53. When Ms. Parsons was terminated in August of 2004, she was replaced by Angie Thomas, who was approximately 30. Plaintiff replaced Lorraine Grant, who was over 40, in Nevada. Eventually, Ms. Grant was fired. After plaintiff was terminated, her position was filled by transferring Angie Thomas. Ms. Thomas left the position and it is currently unfilled. Defendants point out that two of the employees whom plaintiff stated she was told to fire because they were too old are still with the company. Further, it is noted that plaintiff has admitted that there were a number of directors with the company who were over forty.

"To prove that her termination was because of her age, a plaintiff needs to present evidence that her 'discharge was part of a pattern of [the employer's] discharging employees over forty and distributing their work to younger employees.'" Wittenburg, 464 F.3d at 840 (citation omitted). The Eighth Circuit has held that evidence of a pattern of employees over forty leaving the company and being replaced by younger employees, while not conclusively evidence of age discrimination in itself, is the kind of fact "which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome. Morgan v. Arkansas Gazette, 897 F.2d 945, 950 (8thCir. 1990), cited in Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir. 1991). Where a plaintiff presents no evidence that the termination was part of a pattern of the employer discharging employees over forty and distributing their work to younger employees, the evidence does not permit a reasonable inference of discrimination, when there are legitimate reasons to distribute a discharged employee's duties to other employees performing related work. "Although [plaintiff] is entitled to the benefit of all reasonable inferences, an inference is reasonable only if it can be drawn from

25

the evidence without resort to speculation." Id. at 541 (citation omitted).

After reviewing the record, the Court is unable to find sufficient evidence to support plaintiff's claim that defendants had a pattern or policy of discriminatory conduct. Plaintiff has admitted that when she first became employed with Equi-Management, most of the directors were over 40; she admitted in her deposition that at the time she was terminated, she cannot say that the number of executive directors over 40 were any fewer than when she became executive director in 2003. [Plaintiff's Depo. at 138-39]. She testified in her deposition that she can only say that she perceived directors over 40 being terminated, but was not aware of who was replacing them. While some individuals over 40 may have been discharged, they may or may not have been replaced by younger individuals, and there is no evidence of a pattern or policy of targeting older employees, as plaintiff suggests. She has failed to satisfy her burden, as she has presented no evidence support her contention that defendants' had a pattern of conduct or policy of discriminating on the basis of age.

After careful review, the Court finds that plaintiff has not produced evidence sufficient to raise an issue of material fact on whether defendants' proffered non-discriminatory reason for firing her was pretextual, and has failed to create a reasonable inference that age was a determinative factor in the adverse employment decision. Regardless of plaintiff's contentions regarding the reasons she believes she shouldn't have been written up or placed on probation, and her opinion regarding her performance evaluations by other supervisors, she has admitted the relevant, material facts in this case that render her claims of pretext nonpersuasive. Further, federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgment involve

intentional discrimination" of protected classes.  Xylene Zhuang v. Datacard Corp., 414 F.3d 849, 855 (8th Cir.2005).  In light of the uncontroverted evidence of her failure to follow direct orders, her being placed on indefinite probation, and receiving a mixed performance review, the Court concludes that plaintiff has not presented evidence sufficient to create a triable issue on the question of pretext, and to create a reasonable inference that age was a factor in her termination.

Having carefully reviewed the evidence in this case, the Court finds that no reasonable fact finder could conclude that defendants' reasons for termination plaintiff were pretextual and that there is a reasonable inference that age was the determinative factor for her termination. Plaintiff has failed to set forth evidence that would allow an inference, as a matter of law, of intentional age discrimination.  Therefore, defendants' motion for summary judgment on her age discrimination claim under the ADEA and MHRA will be granted.

**II. Retaliation Claim**

<u>Legal Standard</u>

Title VII of the Civil Rights Act of 1964 prohibits employers from taking adverse actions against employees in retaliation for employee reports of harassment or discrimination. 42 U.S.C. § 2000e-3(a).   Mo. Rev. Stat. § 213.070 prohibits retaliation and discrimination in any manner because of an individual's opposition to prohibited employment practices such as age discrimination.  "A claim for retaliation is not based upon [prohibited] discrimination, but instead upon an employer's actions taken to punish an employee who makes a claim of discrimination." Haas, 409 F.3d at 1036. In general, as long as a plaintiff had a reasonable, good faith belief that there were grounds for a claim of discrimination or harassment, the success or failure of a retaliation claim is analytically divorced from the merits of the underlying

Case 3:06-cv-05068-JCE   Document 70   Filed 10/11/07   Page 27 of 36

discrimination or harassment claim. See Foster v. Time Warner Entm't. Co., 250 F.3d 1189, 1195 (8th Cir.2001) (stating that a retaliation plaintiff " 'need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying conduct violated the law" ').

The Court applies the burden shifting framework set forth in McDonnell Douglas to analyze retaliation claims. The ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by retaliatory intent, and the ultimate burden of proof or persuasion to show that the employer's conduct was motivated by retaliatory intent remains at all times on the plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

To succeed under this analytical framework, the plaintiff must first present evidence sufficient to establish a prima facie case. Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 632 (8th Cir. 2005). There are three elements to a prima facie retaliation case. The plaintiff must demonstrate that she took part in protected conduct, that she was subjected to an adverse employment action, and that there exists a causal nexus between the protected conduct and the adverse action. Id.

Discussion

Defendants assert that summary judgment should be granted on the retaliation claim because plaintiff knew that there was a policy that required that any alleged discrimination be reported immediately, and that she agrees that she never reported any complaints or any discrimination. Therefore, she cannot prove that she participated in a protected activity of reporting discrimination, and cannot prove that her termination was causally connected to a report that never occurred. It is reiterated that she because she never reported any allegation of

28

age discrimination before she was terminated, they are entitled to summary judgment on this claim as well.

Plaintiff contends that there is jury issue regarding whether she was retaliated against under the ADEA and MHRA as a result of opposing illegal discrimination. Plaintiff asserts that her refusal to reprimand or terminate employees because of their age as directed by her superiors satisfied the element of protected activity under both the prohibitions of the ADEA and MHRA. She claims she was written up almost immediately and then terminated just a few months after refusing to terminate Forsythe, Halcomb, and Carr. She contends that beginning in approximately March of 2005, Carolyn Thomas told her to fire Forsythe, a nurse in her mid-50's, Carr, a cook in her mid-60's, and Halcomb, the Activities Director, in her 50's, all of which she refused to do. She claims that she told Carolyn Thomas that it was wrong and unlawful to terminate employees because they were old, but that Thomas insisted that younger employees would be better workers, have more energy, be more enthusiastic, and stimulate the residents. Plaintiff states that she told Carolyn Thomas that this was wrong and she wanted nothing to do with firing older employees.

It is also plaintiff's contention that the unwarranted write-up in March of 2005, the indefinite probation, the negative performance evaluation, and the transfer were adverse employment actions, in addition to her termination, because a reasonable person would be deterred from making a complaint of discrimination. Therefore, it is her position that there is sufficient evidence for a reasonable jury to conclude that she suffered multiple adverse employment actions in retaliation for her opposition to firing older employees.

Plaintiff further asserts that there is a sufficient causal connection in these adverse actions

to satisfy a prima facie case because of the timing of the protected activity and the adverse employment action. In addition to timing, she claims there is circumstantial evidence to support her claim because she has presented a plethora of evidence to show an atmosphere of condoned age discrimination, ageist comments, and targeting of older employees with discipline, harassment, and termination in favor of younger employees, all spear-headed by defendants' top management. She contends that there was a pattern of eliminating unwanted older employees, even in the face of her opposition, which is sufficient evidence for a reasonable juror to infer an intent to retaliate against plaintiff. It is her contention that her alleged complaints to Carolyn Thomas were protected activity because the complaints come within the gamut of "opposing any practice," which is prohibited by the MHRA, in reliance on <u>Barekman v. City of Republic, Missouri,</u> No. 27939, 2007 Mo. App. LEXIS 1264 (Mo. App. Sept. 11, 2007). Plaintiff asserts that the same arguments regarding pretext under her age discrimination claim apply to the retaliation claim. Accordingly, she states that defendants' motion for summary judgment should be denied.

In defendants' reply to plaintiff's response to the summary judgment motion, they argue that plaintiff has attempted to contrive a "report" of illegal behavior after giving a lengthy deposition and executing previous sworn affidavits by offering another affidavit with new allegations. Defendants assert that this affidavit should be stricken. It is asserted that for the first time in her affidavit in support of her response to defendants' summary judgment motion, [Plaintiff's Exhibit T], she alleges that when Ms. Thomas told her on several occasions to fire Ms. Carr, Ms. Forsythe and Ms. Halcomb, she stood up to these demands and told Ms. Thomas it would be "wrong." In contrast, defendants note that in plaintiff's Charge Affidavit [Plaintiff's

Exhibit M], which is five pages long, and includes the alleged instructions to fire the older workers, there is no mention that plaintiff informed Ms. Thomas that this was "wrong," to constitute a reporting of the conduct. Additionally, defendants note that plaintiff never mentioned in her complaint that she informed Ms. Thomas that her instructions to fire these individuals would be "wrong." When plaintiff was asked in Interrogatories No. 14 and 15 to identify with specificity all the evidence she believed supported any allegation in her complaint, she merely referred to the Charge Affidavit and her Rule 26 disclosures, and neither of these referred to any conversation in which she reported to Ms. Thomas or anyone else that the firings Ms. Thomas allegedly ordered were wrong. Finally, defendants state that during plaintiff's 281 pages of testimony, including cross-examination, she never alleged that she reported the "wrong" to Ms. Thomas or anyone else. Defendants contend that this is a sham affidavit, that the issue has been addressed by the Eighth Circuit, and that the affidavit should be stricken.

Under Federal Rule of Civil Procedure 56(c), the Court can enter summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

The Eighth Circuit has clearly ruled that "an affidavit filed by the plaintiff in opposition to a motion for summary judgment that directly contradicted the plaintiff's previous deposition testimony [is] insufficient to create a genuine issue of material fact under Rule 56." City of St. Joseph, Mo., v. Southwestern Bell Telephone, 439 F.3d 468, 475-76 (8th Cir. 2006) (citation omitted). The Court cautioned, however, that district courts must use extreme care and only grant summary judgment where "the conflicts between the deposition and affidavit raise only

sham issues." Id., citing Camfield Tires, Inc., v. Michelin Tire Corp., 719 F.2d 1361, 1366 (8th Cir. 1983). In this case, as directed by the Eighth Circuit, the Court will review with care its reasons for finding that plaintiff's affidavit contradicted her prior deposition testimony, as well as other pertinent portions of the record.

At the outset, it is not questioned that plaintiff's termination constitutes adverse employment action. Whether the write-up, probation, and mixed performance evaluation also constitute adverse employment action are questions that need not be addressed by the Court because, after careful review, it is the finding of the Court that plaintiff has failed to demonstrate that she engaged in statutorily protected activity. In Exhibit T, plaintiff's affidavit submitted in support of her response to defendants' motion for summary judgment, she asserts in ¶ 17 that Ms. Thomas approached her regarding terminating Kathy Carr, LaDonna Forsythe, Marcia Somers and Jackie Halcomb. "I repeatedly told Carolyn that terminating these employees was wrong, and I repeatedly told her that you cannot get rid of employees just because they are old. Carolyn would then respond by telling me that younger employees could then be hired that would be better workers, have more energy, be more enthusiastic and stimulate the residents. In response, I would the [sic] tell Carolyn that I was not going to have this discussion with her and repeated to her it was wrong." By contrast, in her complaint, plaintiff simply states she refused to fire these individuals. In her deposition testimony, she testified that there was a nondiscriminatory policy, and that she knew what to do and not do in the event of a complaint of discrimination. [Depo. at 127-28. She stated she saw discrimination and it was "openly discussed," but she never put anything in writing that said anything about age discrimination. [Depo. at 129]. She never made any verbal complaint to Human Resources about any type of

32

discrimination before her termination, about her or anyone else. [Depo. at 130]. Plaintiff also testified that she didn't know if "report" would be the right word, but that she discussed how many older workers were gone with co-workers and with her family, naming a few of the workers, and stating specifically that she never complained about age discrimination to Eric Lindsey, Jennifer Upshaw or Lisa Howerton. [Depo. at 131-137]. Plaintiff never mentioned Carolyn Thomas as being a person with whom she talked about age discrimination. In her response to defendants' summary judgment motion, plaintiff admits that she knew there was a harassment policy in the employee handbook, which required immediate reporting to a supervisor or Human Resources, and that she never reported harassment to anyone in Human Resources. [Plaintiff's Response, at 31].

In regard to plaintiff's contention that her alleged complaints to Carolyn Thomas come within the gamut of "opposing any practice," the Court notes that the facts in Barekman are distinguishable from the instant case. The plaintiff in that case actually lodged complaints with the city about sexual harassment, and contended that the city refused to investigate the complaints. This is a far cry from plaintiff's after-the-fact assertions that she informed Ms. Thomas it was "wrong" to discharge older employees.

A careful review of the record indicates that plaintiff failed to mention at any opportunity during the progression of this case that she actually reported to anyone that firing older workers would be wrong. Plaintiff must establish that she engaged in protected activity to survive summary judgment on her retaliation claim. Up until the time that she submitted her affidavit in Exhibit T in response to the summary judgment motion, plaintiff never asserted that she had told Ms. Thomas or anyone else that she thought it was "wrong" to fire older employees. At most,

she talked to some co-workers and some family members about her belief that some of the older workers were gone from the company. Even accepting these assertions as absolutely true, such comments would not rise to the level of engaging in protected activity under the law. She completely denied that she ever complained to Eric Lindsey, Jennifer Upshaw, or Lisa Howerton. She admitted that she never put anything in writing. Further, if the actual numbers are examined, even her statement that there were fewer older workers is not supported by the record. As noted by the Court in City of St. Joseph, the Court may also consider the timing of the affidavit, which was filed with plaintiff's Response to Defendants' Motion for Summary Judgment. As in that case, the timing, in addition to the factors mentioned herein, indicate that plaintiff "engaged in a last-minute effort to create a genuine issue of material fact. . . ." Id. at 476. This Court finds that plaintiff's sudden revision of her testimony is an attempt to create an issue of fact regarding having in engaged in protected activity, where none existed before. Therefore, the Court agrees that plaintiff's Exhibit T should be stricken. Accordingly, the Court finds that plaintiff has failed to meet her burden of establishing that she engaged in protected activity. As a result, there can be no causal connection between protected activity and the adverse employment action. For these reasons, plaintiff has failed to establish a prima facie case of retaliation.

Therefore, defendants' motion for summary judgment on plaintiff's claim of retaliation must be granted.

Conclusion

Accordingly, it will be the order of the Court that defendants' motion for summary judgment be granted on all three Counts of plaintiff's complaint.

34

Based on the foregoing, it is

ORDERED that defendants' motion for summary judgment be, and it is hereby, granted.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 10/11/07