Westlaw.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

United States Court of Appeals,
Eighth Circuit.
Coralyn Anne BROWN, Appellee,
v.
LESTER E. COX MEDICAL CENTERS, d/b/a
Cox Medical Centers South, Appellant.
**No. 01-1096, 01-1434, 01-2150.**

Submitted: Dec. 12, 2001.
Filed: April 17, 2002.
Rehearing and Rehearing En Banc Denied: May 22, 2002.

Nurse brought suit against hospital where she had formerly been employed, alleging that hospital had discriminated against her in violation of Americans with Disabilities Act (ADA) when she was transferred from surgical duties to position working in sterile supply room. After jury returned verdict for nurse, the United States District Court for the Western District of Missouri, Dean Whipple, J., denied hospital's motion for judgment as a matter of law, and after nurse accepted a remittitur entered judgment in her favor. Hospital appealed. The Court of Appeals, Riley, Circuit Judge, held that: (1) evidence supported jury finding that hospital officials regarded multiple sclerosis (MS) from which nurse suffered as substantially limiting her ability to perform major life activity of thinking, and thus regarded her as "disabled" within meaning of ADA; (2) nurse's transfer constituted an "adverse employment action" under ADA; and (3) evidence supported award of $50,000 for emotional distress resulting from transfer.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ⇐776**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)1 In General
            170Bk776 k. Trial De Novo. Most Cited Cases
Court of Appeals reviews the denial of motion for judgment as a matter of law de novo, using the same standards applied by the district court. Fed.Rules Civ.Proc.Rule 50, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⇐2127**

170A Federal Civil Procedure
   170AXV Trial
      170AXV(F) Taking Case or Question from Jury
         170AXV(F)1 In General
            170Ak2126 Determination
               170Ak2127 k. Construction of Evidence. Most Cited Cases

**Federal Civil Procedure 170A ⇐2142.1**

170A Federal Civil Procedure
   170AXV Trial
      170AXV(F) Taking Case or Question from Jury
         170AXV(F)2 Questions for Jury
            170Ak2142 Weight and Sufficiency of Evidence
               170Ak2142.1 k. In General. Most Cited Cases

**Federal Civil Procedure 170A ⇐2148.1**

170A Federal Civil Procedure
   170AXV Trial
      170AXV(F) Taking Case or Question from Jury
         170AXV(F)2 Questions for Jury
            170Ak2148 Credibility of Witnesses
               170Ak2148.1 k. In General. Most Cited Cases
In making determination whether there is no legally sufficient evidentiary basis for a reasonable jury to find for nonmoving party, as will warrant grant of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

motion for judgment as a matter of law, court must draw all reasonable inferences in favor of the non-moving party without making credibility assessments or weighing the evidence. Fed.Rules Civ.Proc.Rule 50, 28 U.S.C.A.

**[3] Civil Rights 78 €⇌1217**

78 Civil Rights
 78II Employment Practices
  78k1215 Discrimination by Reason of Handicap, Disability, or Illness
   78k1217 k. Practices Prohibited or Required in General; Elements. Most Cited Cases
 (Formerly 78k173.1)
ADA generally makes it unlawful for an employer to discriminate against an employee on the basis of a disability. Americans with Disabilities Act of 1990, § 102(a), 42 U.S.C.A. § 12112(a).

**[4] Civil Rights 78 €⇌1019(2)**

78 Civil Rights
 78I Rights Protected and Discrimination Prohibited in General
  78k1016 Handicap, Disability, or Illness
   78k1019 Who Is Disabled; What Is Disability
    78k1019(2) k. Impairments in General; Major Life Activities. Most Cited Cases
 (Formerly 78k107(1))
The ability to perform cognitive functions on the level of an average person is a "major life activity," an impairment affecting which constitutes a "disability" within meaning of ADA. Americans with Disabilities Act of 1990, § 3(2)(A, C), 42 U.S.C.A. § 12102(2)(A, C); 29 C.F.R. Part 1630 App., § 1630.2.

**[5] Civil Rights 78 €⇌1552**

78 Civil Rights
 78IV Remedies Under Federal Employment Discrimination Statutes
  78k1543 Weight and Sufficiency of Evidence
   78k1552 k. Discrimination by Reason of Handicap, Disability, or Illness. Most Cited Cases
 (Formerly 78k242(3))
Evidence supported jury finding that hospital officials had regarded "relapsing remitting" multiple sclerosis (MS) from which nurse suffered as substantially limiting her ability to perform major life activity of thinking, and thus regarded her as "disabled" within meaning of ADA, so that her reassignment from surgical duty to sterile supply room could potentially constitute a violation of ADA; while supervisors professed a belief that nurse had difficulty dealing with "stressful situations," little evidence supported that belief, while ample evidence indicated that supervisors were using stress as an excuse to get nurse out of surgical unit and into supply room, where her only duties were clerical. Americans with Disabilities Act of 1990, § 3(2)(A, C), 42 U.S.C.A. § 12102(2)(A, C); 29 C.F.R. Part 1630 App., § 1630.2(j)(1).

**[6] Civil Rights 78 €⇌1219**

78 Civil Rights
 78II Employment Practices
  78k1215 Discrimination by Reason of Handicap, Disability, or Illness
   78k1219 k. Adverse Actions in General. Most Cited Cases
 (Formerly 78k173.1)
An "adverse employment action" within meaning of ADA is one that causes a material change in the terms or conditions of employment; to be adverse, an employment action must do more than merely make an employee unhappy, but it need not always involve termination or even a decrease in benefits or pay. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[7] Civil Rights 78 €⇌1219**

78 Civil Rights
 78II Employment Practices
  78k1215 Discrimination by Reason of Handicap, Disability, or Illness
   78k1219 k. Adverse Actions in General. Most Cited Cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

(Formerly 78k173.1)
A transfer from one job to another is not an "adverse employment action," within meaning of ADA, if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[8] Civil Rights 78 €═1220**

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1220 k. Particular Cases. Most Cited Cases
(Formerly 78k173.1)
Evidence supported finding that nurse suffered an "adverse employment action" within meaning of ADA when she was reassigned from surgical duties to work in sterile supply room, which was job requiring only clerical duties; nurse was removed from a permanent position and placed in a temporary one and was prevented from using her professional skills, and given supervisor's promise to tell prospective employers that nurse needed to find a new job because of health reasons, jury could have found that her transfer significantly hurt her future job prospects. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[9] Civil Rights 78 €═1552**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1543 Weight and Sufficiency of Evidence
            78k1552 k. Discrimination by Reason of Handicap, Disability, or Illness. Most Cited Cases
(Formerly 78k242(3))
Evidence supported jury findings that nurse's reassignment from surgical duties to position in sterile supply room was based on her supervisors' perception of her ability to think, and that nurse was "otherwise qualified" to work in the operating room, as required to support recovery on nurse's claim that transfer was based on disability created by multiple sclerosis (MS) from which she suffered, and thus was in violation of ADA. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[10] Civil Rights 78 €═1574**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1569 Monetary Relief; Restitution
            78k1574 k. Measure and Amount. Most Cited Cases
(Formerly 78k274)
Testimony of nurse and her daughter regarding embarrassment and demoralization nurse suffered as a result of her reassignment from surgical position to work in sterile supply room, which was position that required only clerical skills, supported award of $50,000 for emotional distress in nurse's action against hospital under ADA, in which she alleged that transfer had been unlawfully based on disability from which she suffered. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[11] Federal Civil Procedure 170A €═2313**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(A) In General
            170Ak2313 k. Discretion of Court. Most Cited Cases
Decision whether to grant a new trial lies within the sound discretion of the district court.

**[12] Federal Civil Procedure 170A €═2332**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(B) Grounds
            170Ak2332 k. Misconduct of Parties, Counsel or Witnesses. Most Cited Cases

**Federal Civil Procedure 170A €═2377**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(C) Proceedings
            170Ak2377 k. Remittitur. Most Cited
District court did not abuse its discretion by deciding to grant a remittitur, rather than to award a new trial, in action brought under ADA by nurse who had been transferred from surgical work to clerical position; challenged comments by defense counsel on which motion was based in part, which placed ADA within a historical context of other anti-discrimination laws, were not improper, and were not objected to at time they were made. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[13] Federal Civil Procedure 170A ⇐2725**

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2725 k. Offer of Judgment; Compromise or Attempted Compromise. Most Cited Cases
A plaintiff who declines an offer of judgment and does not obtain a more favorable judgment may not recover costs, and possibly attorney fees, for work after the offer. Fed.Rules Civ.Proc.Rule 68, 28 U.S.C.A.

**\*1042** Donald W. Jones, argued, **Springfield**, MO ( Aaron D. Jones, **Springfield**, MO, on the brief), for appellant.

Lynn J. **Bratcher**, argued, Kansas City, MO (Marie L. Gockel, Kristi L. Kingston, Kansas City, MO, on the brief), for appellee.

Before MORRIS SHEPPARD ARNOLD, BEAM, and RILEY, Circuit Judges.

RILEY, Circuit Judge.

Coralyn Anne Brown (Brown) prevailed on her claim that her former employer, Lester E. Cox Medical Centers (Cox), discriminated against her in violation of the Americans with Disabilities Act of 1990(ADA). The district court FN1 denied Cox's motion for judgment as a matter of law, but granted Cox's motion for a new trial or remittitur. After Brown avoided a new trial by accepting a remittitur, the district court awarded Brown attorney fees. Cox appeals, and we affirm.

    FN1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

**I. BACKGROUND**

Coralyn Anne Brown has been a registered nurse since 1971. In the early 1980s, Brown was diagnosed with " relapsing remitting" multiple sclerosis (MS), which is characterized by isolated flare-ups sometimes separated by long intervals of time. Brown experienced symptoms of MS in 1981, late 1984, and early 1985. By October 1992, Brown reported fatigue and difficulty finding words, which caused her treating physician to recommend that she take two weeks off of work. Brown took the time off and returned to work later that month. She did not see her doctor again until 1994.

**\*1043** From the 1980s through 1993, Brown worked intermittently for Cox in **Springfield**, Missouri. In 1992, Cox rehired Brown and assigned her to work as a surgical nurse in the operating rooms. During her employment at Cox, Brown received positive performance reviews in spite of her MS. Two of Brown's supervisors, Susan Hoover (Hoover) and Phyllis Dew (Dew), both knew that Brown had MS and gave her good evaluations. Brown received an acceptable performance review on June 10, 1993, shortly before the occurrence which led to this lawsuit.

That occurrence took place on July 29, 1993, in one of Cox's operating rooms. In preparation for a dental surgery, and in accordance with a medication card filled out by the surgeon, Brown, as the circulating nurse, prepared a local anesthetic containing adrenaline. The patient, an eighty-five year old wo-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

man, was allergic to adrenaline. A certified nurse anesthetist in the operating room, Jo Shughart (Shughart), recognized the danger. Shughart was not a Cox employee. After consulting with the surgeon and the anesthesiologist, Shughart prepared and administered an anesthetic without adrenaline. Although the surgery then took place without further incident, Shughart reported the occurrence to Dew. Brown made a record of the incident by filling out a report.

Around the time of the adrenaline incident, Nancy Garrett (Garrett), Cox's director of surgical services, learned about Brown's MS. One or two weeks after the surgery, Brown was called to a meeting with Dew and Garrett. At the meeting, Dew and Garrett discussed the adrenaline incident, as well as more general complaints about Brown's performance. A statement placed in Brown's personnel file described the meeting, in part, as follows:

Several specific incidents were discussed with [Brown], such as responding very slowly to the scrub tech's need for supplies and an apparent inability to adapt to rapidly changing situations. She also seemed to have difficulty organizing her thoughts, remembering things and communicating with other personnel in stressful situations.

Dew and Garrett told Brown about another nurse who had MS and who had been moved out of surgery. An unsigned, undated performance document was also attached to Brown's already completed June 1993 performance evaluation. In this document, Dew related her concern "about the effects of [Brown's] health status on her stamina and on her reaction time."

Following her meeting with Dew and Garrett, Brown was reassigned to the sterile supply room, which her fellow nurses called "the dummy room," at least in part because it contained two dumbwaiter elevators. There, Brown worked as an orderly, checking expiration dates on medications, replacing expired medications, and preparing medical supplies for the next day's surgeries. These tasks required an ability to alphabetize and read dates, but not a nurse's skills or training. Although Brown did not take a cut in pay or benefits, she was told her job in the supply room should have come with a loss in pay. Eventually, Garrett told Brown she would have to find another job. Garrett also said she would tell Brown's prospective employers-including other employees of Cox if Brown sought another job with Cox-that Brown was dependable but needed to find another job because of "health reasons." Brown worked in the supply room for three months.

On November 17, 1993, Garrett told Brown she could return to the surgery room as a circulating nurse. Brown testified she perceived this offer as a threat because she would be watched and monitored every minute. After this conversation with Garrett, Brown left Cox.

*1044 At trial, both Brown and her daughter, Becky McClung, testified about the demoralizing effect that the reassignment had on Brown. Brown testified that the reassignment "embarrassed" her and caused her to suffer a "hurt ego" and a loss of self-esteem. Brown also said it was "very hard to work" in the supply room, and co-workers asked whom she had angered to get herself reassigned there. Brown presented no evidence that the reassignment caused her to suffer physical symptoms of distress or forced her to seek psychological treatment.

Brown filed this lawsuit, and her case went to trial based solely on a claim that Brown's transfer to the sterile supply room violated the ADA. The jury found in Brown's favor and awarded her $140,000 in damages for emotional distress. The district court denied Cox's motion for judgment as a matter of law, but granted its motion for a new trial or remittitur. Rather than proceed again to trial, Brown accepted a $90,000 remittitur, and the judgment in her favor was reduced to $50,000.

Cox filed its notice of appeal of the verdict on January 2, 2001. Brown filed, and later dismissed, a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
(Cite as: 286 F.3d 1040)

Page 6

cross appeal of the district court's refusal to submit punitive damages to the jury. On February 8, 2001, the district court awarded Brown attorney fees of $59,489.25 and $6,298.50 in paralegal fees. On April 25, 2001, the district court awarded $2,483.50 in additional attorney fees. Cox appeals these awards as well.

On appeal, Cox challenges the jury's finding of liability and the award of actual damages. In the alternative, Cox argues that, despite the remittitur, it still deserves a new trial based on errors in the jury instructions, errors in the admission of certain testimony, and unfairly prejudicial comments which Brown's lawyer made during her closing argument. Finally, Cox challenges the district court's awards of attorney fees to Brown.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

[1][2] A district court's denial of judgment as a matter of law is reviewed de novo, using the same standards applied by the district court. *See Phillips v. Collings,* 256 F.3d 843, 847 (8th Cir.2001). Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). "In making this determination, the court must draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." *Phillips,* 256 F.3d at 847 (citing *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554-55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990)).

#### 1. Liability Under the ADA

[3] In general, the ADA makes it unlawful for an employer to discriminate against an employee on the basis of a disability. 42 U.S.C. § 12112(a). Under the ADA, a disability means "a physical or mental impairment that substantially limits one or more ... major life activities" and includes "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C). Brown claims that Cox regarded her MS as a disability and discriminated against her on that basis.

[4] To constitute a disability under the ADA, an impairment must affect a "major life activity." *Id.* Major life activities are "those basic activities that the average person in the general population can perform with little or no difficulty." *104529 C.F.R. Pt. 1630, App. The ability to perform cognitive functions on the level of an average person certainly falls within this category. *See Mattice v. Memorial Hosp. of S. Bend, Inc.,* 249 F.3d 682, 684 (7th Cir.2001) (anesthesiologist's claim that he was discriminated against because of an inability to perform "cognitive thinking" stated a claim under the ADA).[FN2] Cox does not dispute that this level of thinking is a major life activity for purposes of the ADA.

> FN2. The regulations implementing the ADA also list as major life activities "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Although Brown claims she was regarded as being substantially limited in her ability to learn, nothing in the record bears out that claim.

[5] Cox's strongest argument against the verdict is that it did not regard Brown's MS as a substantial limit on her ability to think. A "substantial limit" means an inability or a significant restriction on the ability to perform a major life activity that the average person in the general population can perform. *See* 29 C.F.R. § 1630.2(j)(1). Cox argues that, while it deemed Brown's performance below the appropriate standard for a surgical nurse, it did not consider her a below-average thinker.

Although there is evidence to support Cox's argument, there is also substantial evidence in support of the jury's verdict. Although Brown's supervisors

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

professed a belief that Brown had difficulty dealing with "stressful situations," there was little evidence to support their belief. In contrast, there was evidence-including the undated attachment to Brown's performance evaluation-that Brown's supervisors were using stress as an excuse to get her out of the surgical unit. Brown's supervisors did not attempt to find her a less stressful nursing position. Instead, they reassigned Brown to the sterile supply room where her only responsibilities were clerical. As Garrett eventually made clear, Brown's job in the supply room was only temporary, and she was expected to look elsewhere for work. Taken together, and viewed in the light most favorable to Brown, these circumstances rebut Cox's explanation for its behavior and suggest Cox thought Brown's MS made her unfit for any further employment at Cox. This permissible inference supports the jury's finding that Cox regarded Brown as being disabled under the ADA.

[6][7] Cox also challenges the jury's finding that Brown suffered an adverse employment action. An adverse employment action is one that causes a material change in the terms or conditions of employment. *Duffy v. McPhillips,* 276 F.3d 988, 992 (8th Cir.2002). To be "adverse," an employment action must do more than merely make an employee unhappy, but it need not always involve termination or even a decrease in benefits or pay. *Phillips,* 256 F.3d at 848. Nevertheless, a transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits. *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir.1997). The courts should not become a personnel review board.

[8] Viewed in the light most favorable to the verdict, the evidence showed a significant, detrimental change in Brown's working conditions. Brown's supervisors removed her from a permanent position and placed her in a temporary one. Considering Garrett's promise to tell prospective employers that Brown needed to find a new job because of "health reasons," the jury could have found that Brown's transfer*1046 from the operating room to the surgical supply room significantly hurt her future career prospects. *See Cooney v. Union Pac. R.R. Co.,* 258 F.3d 731, 734 (8th Cir.2001). Brown's position in the surgical supply room also prevented her from using her professional nursing skills. *See Fisher v. Pharmacia & Upjohn,* 225 F.3d 915, 919-20 (8th Cir.2000); *Collins v. Illinois,* 830 F.2d 692, 704 (7th Cir.1987). Certainly Brown, and apparently some other Cox employees (and possibly Brown's supervisors), considered the reassignment to the "dummy room" as a status demotion. While Brown's new job did not come with a reduction in pay, Brown was told that she should have received a pay cut based upon the work she was doing. We find these circumstances, considered as a whole, sufficient to support the jury's finding that Brown suffered an adverse employment action.

[9] Cox's remaining arguments against the jury's finding of liability are without merit. First, there was sufficient evidence that Brown's reassignment was based on her supervisors' perception of her ability to think. Second, there was sufficient evidence that Brown was "otherwise qualified" to work in the operating room. *See* 42 U.S.C. § 12111(8). Finally, although Brown's reassignment may have been justified in order to protect the public from a "direct threat" of substantial harm, *see* 29 C.F.R. 1630.15(b)(2), Cox did not attempt to prove this affirmative defense.

Cox presents the facts in support of its contentions without fully acknowledging our review must interpret the facts and draw all reasonable inferences in favor of Brown, without making credibility assessments or weighing the evidence. Cox presented a strong defense of its actions and showed evidence of good intentions, but the jury simply believed Brown and not Cox on the critical issues.

**2. Damages for Emotional Distress**

[10] The evidence supporting the severity of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67
**(Cite as: 286 F.3d 1040)**

Brown's emotional distress was hardly overwhelming. Nevertheless, we have upheld comparable verdicts based on similar evidence. *See Webner v. Titan Distrib., Inc.,* 267 F.3d 828, 836 (8th Cir.2001) (upholding $25,000 in damages where the plaintiff said he was "scared," "frustrated," and felt empty and like he lost his best friend); *Frazier v. Iowa Beef Processors, Inc.,* 200 F.3d 1190, 1193 (8th Cir.2000) (upholding $40,000 award where plaintiff testified he felt "empty and lost" and his dignity and self-esteem were taken from him, and his ex-wife said he was a "broken man"). In this case, both Brown and her daughter testified about the embarrassment and demoralization Brown suffered as a result of the reassignment. We find their testimony sufficient to support the $50,000 award Brown received after the remittitur.

**B. Motion for a New Trial**

[11][12] The decision whether to grant a new trial lies within the sound discretion of the district court. *See Phillips,* 256 F.3d at 851. Cox argues that the district court should have granted a new trial because it erred in instructing the jury and in admitting certain evidence, and because, during her closing argument, Brown's lawyer placed the ADA within a historical context of other anti-discrimination laws. Having carefully reviewed the record, we find no abuse of discretion in the district court's decision to grant remittitur instead of a new trial. In particular, we note that the challenged comments made by Brown's lawyer in closing were not improper argument, and Cox did not object to the comments at the time they were made.

**C. Attorney Fees**

[13] Cox's arguments against the award of attorney fees border on the frivolous.*1047 Cox's main argument is that Brown is ineligible for at least some of the awarded fees because she refused an offer of judgment prior to trial. Under Rule 68 of the Federal Rules of Civil Procedure, a plaintiff who declines an offer of judgment and does not obtain a more favorable judgment may not recover costs, and possibly attorney fees, for work after the offer. *Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). However, Cox's offer of judgment-$32,500 plus no more than $2,000 in court costs-fell well short of the actual judgment of $50,000 plus costs and attorney fees. We have reviewed Cox's remaining arguments with respect to attorney fees and find them similarly devoid of merit.

**D. Motions on Appeal**

On appeal, the parties have also filed motions which have been consolidated with the merits of the case. Cox filed a motion for damages and costs, arguing that Brown's now-dismissed cross appeal on punitive damages was frivolous. Brown filed a motion to strike Cox's opening brief. Both of these motions are denied.

**III. CONCLUSION**

There was a legally sufficient basis for the jury's verdict in favor of Brown on her claim for damages under the ADA, as well as for the award of damages Brown received after remittitur. Cox's remaining arguments in support of a new trial and against the district court's awards of attorney fees are without merit. Accordingly, we affirm the judgment and attorney fee awards of the district court.

C.A.8 (Mo.),2002.
Brown v. Cox
286 F.3d 1040, 12 A.D. Cases 1831, 23 NDLR P 67

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.